**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant,**

v.

**Bertha BROWN, Appellee.**

**Nos. 91–CV–145, 91–CV–223.**

District of Columbia Court of Appeals.

Argued Feb. 18, 1992.
Decided Feb. 9, 1993.

---

Bruce P. Heppen, Asst. Gen. Counsel, with whom Robert L. Polk, Gen. Counsel, and Arnold I. Melnick, Deputy Gen. Counsel, and Gerard J. Stief, Associate Gen. Counsel, Washington, D.C., were on the brief, for appellant.

Benjamin T. Boscolo, with whom Barry M. Chasen, Greenbelt, MD, was on the brief, for appellee.

Before ROGERS, Chief Judge, WAGNER, Associate Judge, and KERN, Senior Judge.

KERN, Senior Judge:

This appeal presents for our determination three principal issues: first, whether the trial court erred in denying appellant's motion under D.C.App.R. 4(a)(4)[1] to extend time for noting an appeal from an order denying appellant's motion to vacate default judgment; second, whether we have jurisdiction of the appeal[2] that Washington Metropolitan Area Transit Authority ("WMATA") took from the trial court's order denying WMATA's motion to vacate a default judgment; and, third, if we find we have jurisdiction over WMATA's appeal, whether the denial by the trial court of WMATA's motion to vacate the default judgment constituted reversible error. We conclude that under the particular circumstances it is necessary to remand this case for an evidentiary hearing on certain disputed issues of fact that are pivotal to a determination of the jurisdictional issue.

We set forth the chronology of procedural events in order to put the jurisdictional issue in clear perspective. The record reflects that on March 3, 1987, appellee Bertha Brown filed a complaint against WMATA, seeking to recover damages for personal injuries that she alleged she suffered as a result of the negligence by appellant's agents. Both parties diligently pursued the case during the pretrial proceedings. Thus, WMATA filed an answer to Brown's complaint, depositions were taken, interrogatories were answered, a pretrial conference was held, mediation was unsuccessfully pursued, and the case was set for trial on October 19, 1989. The parties and their counsel appeared on the trial date, ready to proceed, but no judge was available, and so the trial was postponed to a date in the future to be determined by the court. It is at this point that a seemingly normal civil proceeding went off the judicial track.

The trial in fact was scheduled for April 9, 1990, which was almost six months after the parties had appeared ready to try this disputed personal injury case. On that date, WMATA did not appear. The trial court, *without more*, entered a default against WMATA subject to *ex parte* proof. However, pursuant to Super.Ct.Civ.R. 55(b)(2), WMATA was entitled to three days written notice before a default judgment should have been entered because it had filed an answer in the case. *Hudson v. Ashley*, 411 A.2d 963, 966 n. 4 & 968 n. 10 (D.C.1990).[3] Moreover, WMATA is a governmental entity established by means of a Compact entered into between the District of Columbia, Maryland and Virginia and consented to by the Congress. *See* D.C.Code § 1–2431 (1987 Repl.). Consequently, Super.Ct.Civ.R. 55(e) requires Brown to establish "a claim or right to relief by evidence satisfactory to the court." Nevertheless, the trial court the

---

1. D.C.App.R. 4(a)(4) provides that the Superior Court may extend the time for filing a notice of appeal for a period not exceeding thirty days from the service otherwise prescribed upon a showing of excusable neglect.

2. The time limit for filing of a notice of appeal in a civil case after the entry of judgment in the trial court is "mandatory and jurisdictional."

*Frain v. District of Columbia*, 572 A.2d 447, 449 (D.C.1990).

3. A defaulting party is entitled to present evidence in mitigation of damages and cross examine witnesses at any hearing to establish unliquidated damages. *Firestone v. Harris*, 414 A.2d 526, 528 (D.C.1980).

next day held an *ex parte* hearing without notice to WMATA.[4] At this hearing, Brown presented only evidence of damages but not of liability on the part of WMATA.[5] The trial court then awarded appellee $9,278.26 with interest at a rate of eight percent per annum from April 10, 1990, plus fifteen percent for attorneys' fees.

WMATA asserts that it did not learn of the judgment entered in April 1990 until Brown's counsel in August 1990 wrote to WMATA inquiring about the method of payment of the judgment. Accordingly, WMATA filed a motion on September 7, 1990, to vacate the default judgment, asserting that WMATA had never received notice of the rescheduled trial date after the parties had been unable to proceed on October 19, 1989, because no judge was available. Contrary to this assertion by WMATA, Brown claims that on the first trial date, "counsel reset the case by mutual consent for April 9, 1990." [6] WMATA also challenged the validity of the judgment pursuant to Super.Ct.Civ.R. 55(b) & (e), asserting that the judgment was void on the grounds (1) WMATA was entitled to three days notice prior to the entry of judgment because it had filed an answer in the case and (2) Brown had to present proof of liability because WMATA is a governmental entity of the District of Columbia.

Not until December 1, 1990, did a judge of the trial court, other than the judge who entered the default, enter an order determining WMATA's motion to vacate.[7] Then, the court denied WMATA's motion *without comment*, despite WMATA's contentions that it had never received notice of the trial date and the judgment was void because the trial court violated its own rules. Again, according to WMATA, it did not receive a copy of *this* order. WMATA asserts that it was not aware that the court had even determined its motion to vacate the default judgment until appellee's counsel telephoned an attorney at WMATA on or about January 15 or 16, 1991 to inquire about payment of the judgment.

Thus, it may be seen from the record that more than a year had elapsed between the time the parties had appeared ready for trial (October 1989) and the time WMATA finally learned that the trial court was upholding a default judgment against it (January 1991). During this time span, WMATA asserts that *twice* it did not receive notice of significant events in this civil litigation; *i.e.*, the date of trial and the date the trial court finally determined WMATA's motion to vacate a judgment entered against it by default.

On February 1, 1991, WMATA moved for a thirty day extension of time within which to file its Notice of Appeal from the trial court's order of December 1, 1990. WMATA filed its initial Notice of Appeal on February 8, 1991 (No. 91–145). On February 15, 1991, the trial court denied WMATA's motion for a thirty day extension of time to file this same Notice of Appeal. Then on February 27, 1991, WMATA filed a second Notice of Appeal (No. 91–223) from this denial order.

The trial court, in denying WMATA's motion to extend its time to file an appeal

---

4. The record reflects some uncertainty as to what exactly were the two consecutive days on which the judgment was entered and then the *ex parte* hearing on proof of damages was held. The computerized docket entries and transcript indicate the relevant dates as April 9th and 10th, while the handwritten court clerk's memorandum shows April 12th and 13th, 1990. We regard April 9th and 10th as the correct dates of record.

5. At the hearing, appellee presented her proof of damages: Brown recounted the incident in question at the escalator at the Deanwood Metrorail Station, her injuries, her time out from work, and her medical expenses. Although Brown's physician did not testify, he submitted an affidavit as to his diagnosis of her condition and the cost of the treatment prescribed for her.

6. The record reflects that the first trial date was on October 19, 1989, and the docket entry reflects that the case was continued by the assignment office on October 20, 1989 to April 9, 1990. There is no praecipe or other evidence in the record reflecting that counsel for the parties agreed on the original trial date to a new trial date.

7. By affidavit, WMATA's counsel said he made inquiry of the clerk's office and was informed that the motion to vacate had not been assigned to a judge. [R. 173]

*without any bearing on the matter*, made a statement that "the record herein belies appropriate case monitoring" and "the apparent pattern of inattentiveness to ongoing litigation goes beyond neglect which is excusable." [R. 176–77] WMATA, however, emphatically maintains that it lacked neither an appropriate case monitoring system nor attentiveness to its ongoing litigation. Rather, WMATA urges that it was the victim of a systemic breakdown of the trial court that left it saddled with a default judgment and denied it an opportunity by appeal to challenge the validity of the default.

WMATA's allegations under the circumstances are troubling.[8] If true, not only have WMATA's rights been trampled upon, but future litigants may encounter similar breakdowns in the system of justice in the District of Columbia. As a consequence, the sound administration of justice requires that the trial court determine after hearing the disputed issue whether the failures to communicate were either a breakdown in the trial court's system of notification or rather a lack of diligence on the part of WMATA. Such a determination is critical to the jurisdictional issue in the case because Rule 4(a) of this court specifically provides for an extension of time in filing a notice of appeal upon a showing of excusable neglect.[9] The purpose of this rule "is to limit [to] a period of 60 days the time in which a notice of appeal may be filed." *Joseph v. Parekh*, 351 A.2d 204, 205 (D.C. 1976). However, the full sixty days is available to appellant if it shows excusable neglect was the cause of its failure to file the appeal within the thirty day time period.[10] The purpose of the thirty day time limitation for noting an appeal is "intended to set a period on which the parties may rely for required action by a litigant," rather than, as appellant asserts happened here, "to dragoon a busy trial court into hasty and ill-considered action by the risk of destruction of appellate rights." *C–Thru Products, Inc. v. Uniflex, Inc.*, 397 F.2d 952, 955 (2d Cir.1968).

Excusable neglect has been held "to include lack of knowledge of entry of a judgment, extraordinary cases such as physical disability and unusual delay in the transmission of mail," and the narrow equitable exception of "'*unique circumstances.*'" *Pryor v. Pryor*, 343 A.2d 321, 322 (D.C. 1975) (per curiam) (citing *Files v. City of Rockford*, 440 F.2d 811, 814–15 (7th Cir. 1971) (emphasis added)). Moreover, if appellant has been "*affirmatively misled* into delaying the filing of a notice of appeal by some action or conduct of the *trial court*" beyond mere passivity, the appeal will be allowed if, thereafter, the notice of appeal is timely filed. *Robinson v. Evans*,

---

8. So far as the record shows, WMATA had zealously committed to this action up to the point of the first trial date. Thereafter, WMATA insists, its pursuit of this case was thwarted, not once but twice, because notice of decisive actions by the trial court were never received. The record, in fact, does reflect some evidence that WMATA failed to receive notices from the trial court because of errors: (1) the clerk's office apparently neglected to record the timely name change request from WMATA's counsel who had entered an appearance in the case [R. 109]; (2) a letter to WMATA was returned to the court as undeliverable because it was incorrectly addressed; and (3) purportedly, the court's jacket "contains the envelope addressed to WMATA for the default judgment order, demonstrating that it was never mailed to WMATA." [R. 168] On the other hand, Brown asserts that WMATA knew of the rescheduled trial date, because she claims that on the first trial date, counsel had reset the case by mutual consent to April 9, 1990. [Appellee's Brief at 9]

9. Specifically the rule provides:

A notice of appeal in a civil case shall be filed with the Clerk of the Superior Court within thirty days after entry of the judgment or order from which the appeal is taken

.... Upon a showing of *excusable neglect*, the Superior Court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the [30 days] otherwise prescribed.

D.C.App.R. 4(a)(1) & (4) (emphasis added).

10. Appellant filed within the sixty-day deadline by filing its appeal on February 8th. That is because the sixty days in the instant case began to run on December 11th (since the trial court signed the order on December 1st), the clerk docketed the order on December 6th, and five days thereafter was December 11th. D.C.App. R. 4(a)(3) (orders signed out of presence of parties considered entered for purpose of noting an appeal the fifth day after the Clerk of Superior Court has made an entry on the docket).

554 A.2d 332, 335 (D.C.1989) (emphasis added). However, "lack of knowledge ... by failure to receive the clerk's notice does not, *without more,* constitute grounds for a finding of excusable neglect." *Pryor, supra,* 343 A.2d at 323 (emphasis added). Also, predictably, "it has been held that the heavy work load of counsel that caused him to overlook the time for appeal does not constitute excusable neglect." *Files, supra,* 440 F.2d at 815.

 In sum, while we have held that mere failure to receive a clerk's notice is insufficient to warrant an extension of the time to file an appeal, we also have recognized that where "unique circumstances" exist or where some action or conduct of the trial court induced a delay in filing its notice of appeal, then there would be a showing of excusable neglect sufficient to justify an extension of time to file the appeal.[11] *See Snow v. Capitol Terrace, Inc.,* 602 A.2d 121 (D.C.1992) (this court found no abuse of discretion when the trial court granted appellant's motion to extend the time to appeal on a finding of "unique circumstances" sufficient to show excusable neglect).

 Given the particular circumstances here, and the absence of any hearing addressing the factual allegations of WMATA, we remand the case to the trial court for an evidentiary hearing to determine whether WMATA failed to receive critical notices from the court through some systemic breakdown, and whether such facts as the trial court determines constitute the requisite "unique circumstances" sufficient to show excusable neglect within the meaning of D.C.App.R. 4(a)(4). We deem it essential that the trial court, after the hearing, set forth clearly its findings and conclusion on the contested issue of excusable

neglect under D.C.App.R. 4(a)(4).[12] *See Trezevant v. Trezevant,* 403 A.2d 1134, 1138–39 (D.C.1979) (where this court remanded for findings of facts on the circumstances surrounding appellant's failure to file a timely notice of appeal and whether this failure was due to excusable neglect).

*So ordered.*[13]

---

**11.** We also note that "the actual act of mailing of notice by the clerk was essential to the computation of appeal time." *Schmittinger v. Schmittinger,* 538 A.2d 1158, 1162 (D.C.1988). Thus, a failure by the clerk to mail notice of the order entered in the instant case would mean that the order had never been "entered" for purposes of appeal.

**12.** While resolution of these questions also has a bearing on the propriety of the entry of the

default, we cannot review the appeal from that order unless it is first determined that the trial court improperly denied appellant's request for an extension of time to note an appeal.

**13.** On remand, the trial court may well determine after a hearing that the default judgment was void *ab initio* so that any appeal may be premature.