**Rochelle V. SAVAGE–BEY, Petitioner,**

v.

**LA PETITE ACADEMY, Respondent.**

**No. 11–AA–502.**

District of Columbia Court of Appeals.

Submitted March 27, 2012.
Decided Aug. 30, 2012.

John C. Kenney, Jr., and David A. Young for petitioner.

Respondent did not file a brief.

Before GLICKMAN and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

THOMPSON, Associate Judge:

Petitioner Rochelle Savage–Bey seeks review of a March 31, 2011, Final Order on Remand of the Office of Administrative Hearings ("OAH") dismissing as untimely her appeal from a Department of Employment Services ("DOES") claims examiner's determination that she was disqualified from receiving unemployment compensation benefits because she was "discharged from [her] job ... for improper conduct." Savage–Bey argues (1) that the OAH Administrative Law Judge ("ALJ") erred in

treating her appeal as untimely, or (2) in the alternative, that her failure to file her appeal within 15 days after the mailing date certified by the claims examiner falls with the "good cause" and "excusable neglect" exceptions created by a recent amendment to the District of Columbia's unemployment compensation statute. In addition, Savage–Bey argues that this court can determine as a matter of law that the grounds offered by the employer for her termination did not amount to misconduct within the meaning of the unemployment compensation regulations. We reverse the ruling dismissing Savage–Bey's appeal as untimely and remand on the misconduct issue.

## I. Procedural History

This matter is before us for the second time. Savage–Bey initially petitioned for review of an April 17, 2009, OAH Final Order, in which the ALJ, after a hearing, dismissed her appeal from the claim's examiner's determination on the ground that the appeal had not been filed within ten days after the Determination denying her claim (the "Determination") was mailed. While the petition was pending before this court, the Council of the District of Columbia passed the Unemployment Compensation Reform Amendment Act of 2010, D.C. Law 18–192 (July 23, 2010), amending D.C.Code § 51–111(b). As amended by that legislation, § 51–111(b) provides in relevant part that:

> The Director [of DOES] shall promptly notify the claimant and any party to the proceeding of its determination, and such determination shall be final within 15 calendar days after the mailing of notice thereof to the party's last-known address or in the absence of such mailing, within 15 calendar days of actual delivery of such notice. The 15–day ap-

peal period may be extended if the claimant or any party to the proceeding shows excusable neglect or good cause. The exception for good cause or excusable neglect shall apply to all claims pending on July 23, 2010, including those in which an appeal has been filed in the Office of Administrative Hearings or in which a petition for review has been filed in the District of Columbia Court of Appeals.

Thus, § 51–111(b) now provides for a fifteen-day (rather than the former ten-day) window for filing an appeal from an adverse claims examiner determination, and it authorizes an extension of the time to appeal upon a showing of excusable neglect or good cause. In an August 3, 2010, Memorandum Opinion and Judgment, we disposed of Savage–Bey's initial petition by vacating OAH's initial Final Order and remanding the case for a determination as to whether Savage–Bey's appeal could proceed under the amended statute. On March 31, 2011, having determined that no additional hearing was necessary,[1] the ALJ issued a Final Order on Remand, in which she again dismissed Savage–Bey's appeal as untimely. The instant petition for review followed.

## II. The Factual Background Pertinent to Timeliness and the Final Order on Remand

Savage–Bey applied for unemployment benefits on August 15, 2008, after respondent La Petite Academy, a pre-school, terminated her employment as a cook/food service manager. In the Final Order on Remand, the ALJ found that DOES mailed the Determination denying Savage–Bey's claim on September 15, 2008. The ALJ based that finding on the following

---

**1.** At the hearing that commenced on February 4, 2008, and that was continued until February 26, 2008 (so that Savage–Bey could obtain counsel), the ALJ heard evidence on both the timeliness issue and the merits of the case.

statement at the bottom of the Determination: "I certify that a copy of this document was mailed to the claimant and to the employer named herein at the above address on 09/15/2008."[2] In light of that certification, the ALJ found that Savage–Bey's appeal, which was not filed until December 5, 2008, was "late."

Generally crediting Savage–Bey's testimony, the ALJ also found that when Savage–Bey applied for benefits, "[a] DOES staff person told Claimant Savage–Bey that she would receive something in the mail"; that Savage–Bey thereafter had "regularly received bi-weekly claim forms in the mail" and was still receiving them in early December 2008; that Savage–Bey "talked to friends who had received unemployment compensation benefits in the past" and who "advised her to wait for DOES to send the Determination"; that "[i]n late October or early November 2008," Savage–Bey "called DOES to inquire about the status of her application"; that on December 4, 2008, when Savage–Bey went to the Naylor Road office, "[a] DOES staff person told [Savage–Bey] that DOES had mailed the Determination to her on September 15, 2008; that a DOES staff person gave a faxed copy of the Determination to Savage–Bey on December 5, 2008; and that Savage–Bey filed her appeal letter in person on the same day.

The ALJ specifically found that Savage–Bey "did not receive the Determination in the mail[.]" However, the ALJ concluded that "[t]he record contains no evidence which rebuts the mail date on the certificate of service." Citing *Thomas v. Nat'l Children's Ctr., Inc.*, 961 A.2d 1063, 1066 (D.C.2008), the ALJ therefore went on to consider whether Savage–Bey "(a) had actual notice of the proceedings; (b) acted in good faith; (c) took prompt action; and (d)

presented an adequate defense." The ALJ stated that Savage–Bey "candidly and credibly testified that she could not remember most of the specific dates on which she pursued her application for benefits," but had "estimated that the first time she called DOES to check the status of her application for benefits was in late October or early November, at least two months after she applied for benefits." The ALJ found that Savage–Bey had then "waited another month and a half, until approximately December 4, 2008, to follow up." The ALJ found that "[t]hese two calls, made more than two months after the appeal period expired and three months after [Savage–Bey] first applied for benefits, do not match the prompt and persistent follow-up demonstrated in *Thomas* and *Frausto* [*v. U.S. Dep't of Commerce*, 926 A.2d 151, 154 (D.C.2007) ], and thus do [not] constitute prompt action on her application." The ALJ reasoned that she therefore could not find that the evidence "rebuts the presumption that DOES mailed the Determination to the correct address on the date on the mail certification."

The ALJ next considered whether Savage–Bey had shown "good cause" or "excusable neglect" within the meaning of § 51–111(b), as amended. The ALJ cited the test for "excusable neglect" articulated in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Having cited *Pioneer*, however, the ALJ went on to compare the duration of the delay in Savage–Bey's case to the duration in various civil and criminal cases from this and other jurisdictions. By comparison to those cases, the ALJ found, "Savage–Bey's three month delay while she was 'having

---

**2.** Addresses for Savage–Bey and for respondent are listed at the top of the Determination. There is no dispute that the address for Savage–Bey shown on the Determination was Savage–Bey's correct mailing address.

patience' based upon friends' advice" did not qualify as excusable neglect. Accordingly, the ALJ dismissed the appeal for lack of jurisdiction (observing that the "15–day period for appeals of DOES Determinations is jurisdictional").

Savage–Bey now argues that the ALJ erred in finding that "DOES established the mailing presumption" and that her appeal was untimely; that the ALJ failed, in applying the good cause and excusable neglects standards, to give proper consideration to Savage–Bey's lack of knowledge that the Determination had been issued, her repeated efforts to follow up on the resolution of her claim, and her good faith actions once she learned of the Determination; and that this court should reverse the denial of benefits on the merits since the record contains "no evidence of intentional disregard of the employer's interests" as is required for a finding of misconduct.

### III. Analysis

 Our review of OAH decisions is limited, and we must affirm unless the decisions of the OAH are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Thomas*, 961 A.2d at 1065 (citation and internal quotation marks omitted). We must be satisfied that the ALJ "(1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evi-

dence, and (3) drew conclusions of law which followed rationally from the findings." *Walsh v. District of Columbia Bd. of Appeals & Review*, 826 A.2d 375, 379 (D.C.2003) (citation and internal quotation marks omitted). Applying those criteria, we agree with Savage–Bey that the ALJ's decision on timeliness cannot be sustained. As to the misconduct issue, OAH has yet to "ma[k]e findings of fact on each material, contested factual issue," and thus we must remand.

### A. Timeliness [3]

 Our case law recognizes a "presumption that correspondence mailed and not returned to the agency is received." *McCaskill v. District of Columbia Dep't of Emp't Servs.*, 572 A.2d 443, 445 (D.C.1990); *see also Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1087 (D.C.2007) (describing the "rebuttable presumption that a letter properly addressed, stamped, and mailed, and not returned to the sender, has been delivered to the addressee"). As we have cautioned, however, "a certificate of service attached to a DOES claims determination is insufficient proof of the date DOES mailed the determination in light of a claimant's assertion that she did not receive the determination until after the ten-day appeal period expired, if at all." *Burton v. NTT Consulting, LLC*, 957 A.2d 927, 929 n. 3 (D.C.2008). This princi-

---

**3.** We have consistently held that the statutory "[time] period provided for administrative appeals under [§ 51–111(b)] is jurisdictional, and failure to file within the period prescribed divests the agency of jurisdiction to hear the appeal." *Chatterjee v. Mid Atl. Reg'l Council of Carpenters*, 946 A.2d 352, 354 (D.C.2008) (quoting *Calhoun v. Wackenhut Servs.*, 904 A.2d 343, 345 (D.C.2006)). Savage–Bey argues that this holding has been called into question by doctrinal developments in recent Supreme Court decisions, including *Henderson v. Shinseki*, —— U.S. ——, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011) (clarifying

the distinction between claims-processing rules and jurisdictional limits), and *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (recognizing that limitations periods fall into two categories: claims-processing rules that are subject to equitable tolling, and jurisdictional limits that cannot be extended for equitable reasons). Because we conclude in any event that the appeal should not have been dismissed as untimely, we agree with Savage–Bey that we need not address in this case whether the time limit is jurisdictional.

ple applies *a fortiori* in this case because not only did Savage–Bey assert that she did not receive the Determination, but also the ALJ specifically found that she "did not receive the Determination in the mail."

■ The specific finding that Savage–Bey "did not receive the Determination in the mail" established the "possibility . . . that the [Determination] was not actually mailed on" the date that DOES certified. *Chatterjee*, 946 A.2d at 355. And, just as in *Chatterjee*, the record in this case "does not disclose whether on the date indicated the claims examiner's determination was placed in a DOES outbox from which mail is collected, or whether it was physically placed in the United States Mail," *id.* at 355–56 (citation, internal quotation marks, and brackets omitted), and contains "no other description of agency mailing practices." *Id.* at 356. Accordingly, the ALJ's observation that "[t]he record contains no evidence which rebuts the mail date on the certificate of service" was erroneous; it did not flow rationally from the finding that Savage–Bey "did not receive the Determination in the mail" and the dearth of evidence about the actual mailing date (if any).[4]

■ It was "incumbent upon OAH to resolve th[e] question of fact" about when (if ever) the Determination was mailed to Savage–Bey, since her appeal could be time-barred only if she filed it "more than [fifteen] days after the determination was actually mailed." *Id.* Because the ALJ did not resolve that question, a remand ordinarily would be necessary.[5] We have determined, however, that a remand on the timeliness issue is not necessary here. That is because, we conclude, it was an abuse of discretion for the ALJ to find that the excusable neglect exception does not apply in this case.[6] *Snow v. Capitol Terrace*, 602 A.2d 121, 124 (D.C.1992) (citation and internal quotation marks omitted) (explaining that we review findings of excusable neglect *vel non* for "clear abuse of discretion").

■ We have considered the ALJ's findings in conjunction with the factors relevant to "excusable neglect" articulated in *Pioneer*[7]: "the length of the delay and its potential impact on [the] proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." 507 U.S. at 395, 113 S.Ct.

---

4. Moreover, much as we observed in *Rhea v. Designmark Serv.*, 942 A.2d 651 (D.C.2008), "[r]ead literally, the certificate of service means that a single copy of the examiner's decision was sent only to a single address. That address . . . could have been either the claimant's or the employer's, and no differentiation is made in the certificate between the two parties. Although it is unlikely that the literal meaning of the certificate of service is what the claims examiner meant to convey, the certificate is less than a paragon of accuracy or reliability." *Id.* at 654.

5. *See, e.g., Scott v. Behavioral Research Assocs.*, 43 A.3d 925, 930 (D.C.2012) ("[I]f the ALJ failed to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case

for findings on that issue.") (citation and internal quotation marks omitted).

6. At least arguably—and Savage–Bey so argues—the "good cause" exception also applies, but we need not resolve that issue.

7. We agree with Savage–Bey's observation that while *Pioneer* construed a federal bankruptcy rule that includes an excusable neglect exception, courts have relied on the case to define "excusable neglect" in other contexts. *See generally* 537 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1165 (3d ed. 2002) ("Generally, excusable neglect seems to require a demonstration of good faith on the part of the party seeking an enlargement of time and some reasonable basis for noncompliance within the time specified in the rules.").

1489; *see also Dada v. Children's Nat'l Med. Ctr.*, 715 A.2d 904, 908 (D.C.1998) (discussing the concept of "excusable neglect" and citing *Pioneer* ). As the ALJ found, Savage–Bey filed her appeal on the same day she received a copy of the Determination, so in that sense she acted without delay. Although the appeal was filed more than two months after the mailing date indicated in the claims examiner's certification, nothing in the record indicates that this span of time prejudiced the employer in its ability to present its case. Valinda Farmer, the employer's Assistant Program Director and its witness about the reasons for Savage–Bey's termination, remained in La Petite Academy's employ and was present to testify on both the initial hearing date and the date when the hearing resumed. As to the reason for the delay, Savage–Bey delayed acting because, as the ALJ found, she was told by DOES staff that she "would receive something in the mail." The ALJ also found that Savage–Bey was regularly receiving claims forms from DOES, meaning, we are per-

suaded, that she had no reason to think that her mail was being sent to an incorrect address. It also appears (and the ALJ found in her initial Final Order) that Savage–Bey acted in good faith, "by seeking advice when she did not receive the Determination." The ALJ credited her testimony that friends who had received unemployment benefits advised her that "it's going to take a while" and just to wait. Further, she could reasonably have regarded her continued receipt of weekly claims forms as an indication that her claim was still "live." [8] The ALJ did not specifically discuss (and thus neither specifically credited nor discredited) Savage–Bey's testimony that she made repeated telephone calls to DOES to inquire about the status of her application, reaching only an answering machine.[9] But even under the ALJ's finding that Savage–Bey did not telephone DOES until October or November, it appears that she did so promptly after suspecting that her benefits may have been denied.[10] And, she acted promptly when she was advised to come

---

**8.** We note that the "Claimant's Rights and Responsibilities Handbook," included on DOES's current unemployment insurance website (http://does.dc.gov/service/start-your-unemployment-compensation-process), advises claimants that "[s]hortly after you file your initial claim application, you should receive in the mail your first claim form" and then weekly forms thereafter. DOES's web page advises that "[c]laimants MUST submit Work Search information each week to the DOES for review," and it explains that "[t]his work search is required *for the life of the claim.*" (emphasis added).

**9.** Savage–Bey testified that, after filing her application, she began to receive "blue claims forms in the mail" "to fill out for unemployment," but nothing else. She followed up by telephoning DOES (i.e., she "called up there on the phone ... [and] le[ft] a message for them") and "ha[d] been calling ever since [she began] getting claim forms," although she could not recall the "exact date." She also testified that she "started calling up there

[i.e., the Naylor Road DOES office], I'm going to say, around the end of October, maybe November, about what was going on. They kept sending me my claims forms, but I wasn't receiving anything ... I was leaving messages. I wasn't getting through." She further stated that "[w]hen I finally got through to someone, they talking about I'm going to have to come up there to talk to someone, which is what I did, and that was in ... December."

**10.** Savage–Bey's testimony is difficult to comprehend on this point, but she told the ALJ that she called DOES in October "because they kept saying [she] was denied benefits, and talking to other people, they were saying when they do deny you the first time, give them a couple of weeks, but by then it may have been like six, seven weeks then." It is not clear who was the "they" that "kept saying" that Savage–Bey was "denied benefits," but the relevant point is that this information spurred Savage–Bey to try to obtain information about the determination in her case.

into the DOES office to discuss the matter and acted promptly in filing her appeal when she received the adverse Determination.

Because consideration of each of the *Pioneer* factors points toward satisfaction of the excusable neglect standard—and in light of the principle that the provisions of the worker's compensation statute "should be construed liberally, whenever appropriate to accomplish the legislative objective of minimizing the economic burden of unemployment"[11]—we hold that the ALJ should not have dismissed Savage–Bey's appeal as untimely. We therefore reverse that determination.

### B. Misconduct Vel Non

█ The Determination stated that Savage–Bey was disqualified from receiving benefits until such time as she had been employed "in each of ten (10) weeks ..., have earnings from this employment equal to not less than ten (10) times your Weekly Benefit Amount, and become unemployed through no fault of your own." This language, which tracks the language of D.C.Code § 51–110(b)(1), indicates that Savage–Bey was denied benefits for "gross misconduct."[12] The applicable law is as follows.

█ The unemployment compensation regulations state that the term "gross misconduct" refers to "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." *Scott v. Behavioral Research Assocs.*, 43 A.3d 925, 930–31 (D.C.2012) (citing 7 DMCR § 312.3). What the unemployment compensation statute refers to as "other than gross misconduct," D.C.Code § 51–110(b)(2)—referred to in our case law as "simple misconduct"—is defined to include any other "act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest." 7 DMCR § 312.5. Simple misconduct encompasses "those acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." *Capitol Entm't Servs., Inc. v. McCormick*, 25 A.3d 19, 23 (D.C.2011).

█ "Whether a fired employee's actions constituted disqualifying misconduct, gross or otherwise, is a legal question, and our review of the OAH's ultimate determination of that question is *de novo*." *Scott*, 43 A.3d at 931. "[D]ecisions of this court have made it abundantly clear that an employee's actions must be intentional, deliberate, or willful to amount to gross misconduct." *Id.* (citation and internal quotation marks omitted). We have also explained that "intentionality or its equiv-

---

**11.** *Bublis v. District of Columbia Dep't of Emp't Servs.*, 575 A.2d 301, 303 (D.C.1990) (citation and internal quotation marks omitted); *see also Cruz v. District of Columbia Dep't of Emp't Servs.*, 633 A.2d 66, 71 (D.C. 1993) ("[T]he sufficiency of a claimant's asserted justifications must be considered in light of the remedial purposes of the statute.").

**12.** D.C.Code § 51–110(b)(1) provides that "[f]or weeks commencing after January 3, 1993, any individual who has been discharged for gross misconduct occurring in his most recent work, as determined by duly prescribed regulations, shall not be eligible for benefits until he has been employed in each of 10 successive weeks (whether or not consecutive) and, notwithstanding § 51–101, has earned wages from employment as defined by this subchapter equal to not less than 10 times the weekly benefit amount to which he would be entitled pursuant to § 51–107(b)."

alent (e.g., conscious indifference to, or reckless disregard of, the employee's obligations or the employer's interest) is an element of simple misconduct as well." *Id.* (citation and internal quotation marks omitted); *see also Bowman–Cook v. Wash. Metro. Area Transit Auth.,* 16 A.3d 130, 135 (D.C.2011) (" '[I]mplicit in [the] definition of 'misconduct' is that the employee intentionally disregarded the employer's expectations for performance.' ") (quoting *Washington Times v. District of Columbia Dep't of Emp't Servs.,* 724 A.2d 1212, 1217–18 (D.C.1999)). The employer has the burden of proving that the claimant's termination was for misconduct. *Hamilton v. Hojeij Branded Food, Inc.,* 41 A.3d 464, 473 (D.C.2012).

Noting that the record already contains the parties' evidence pertinent to the merits of the misconduct issue, Savage–Bey argues that we can "reverse on the merits the DOES's denial of benefits" because the record "contains no evidence of [the] intentional disregard of the employer's interests" that is required for a finding of misconduct and, to the contrary, "contains substantial evidence of no intentional misconduct." Savage–Bey further urges that avoidance of a remand is appropriate in light of the "extreme delay" that has ensued in this case.

The uncontroverted evidence is that Savage–Bey was terminated one workday after she called in sick and then failed to come to work even after the employer told her that her absence would not be excused. Savage–Bey testified that she told Farmer that she could not come to work because she was suffering from diarrhea; Farmer, by contrast, testified that, to her recollection, Savage–Bey did not say "what her particular illness was. She just said that she was not feeling well, and I told her that I needed her to come in." Not having reached the merits of the misconduct claim, the ALJ did not resolve this factual dispute. But even if we could conclude as a matter of law (and as Savage–Bey urges) that a "single day medical absence of a licensed food handler serving food to toddlers" does not amount to misconduct (but instead is "commendable"), that still would not enable us to conclude that Savage–Bey was not terminated for misconduct. That is because, although the termination followed the one-day absence just described, Farmer testified that part of the reason why she demanded that Savage–Bey come to work was so that she (Farmer) could deliver to her the termination papers that had already been prepared.[13] In other words, according to Farmer, Savage–Bey's one-day absence purportedly due to diarrhea was not the *sine qua non* of Savage–Bey's termination. Rather, as Farmer testified and as Savage–Bey's brief succinctly describes, the reasons cited by the employer were Savage–Bey's serving the children "cold English muffins with unmelted cheese, disrupting classrooms by 'floating in and out,' slamming classroom doors, and having belligerent interactions with other staff.

Savage–Bey argues that "none [of these cited reasons for her termination] ... establishes the 'willfulness' and 'deliberateness' required for a showing of 'gross misconduct.' " But this court is not the factfinder, and on this disputed record, we cannot reach that conclusion. Savage–Bey correctly notes that she presented testimony in rebuttal to the employer's claim that she served cold English muffins and slammed doors (explaining that the employer's corporate headquarters prepared

---

**13.** As Farmer explained, "we were presenting this [i.e., Ex. 200, the document setting out the reasons for termination] to Ms. Savage-Bey as proof of reason for termination, but Ms. Savage–Bey did not come in to work on the 8th, which was that Friday [when she called in sick], of August. So it was presented to her on the 11th of August."

the menus, which omitted any instruction to heat the muffins, and that the door "slamming" was the result of the doors not having door guards). However, that testimony was neither undisputed nor dispositive. Farmer elicited testimony suggesting that the food service staff had to make amendments to the corporate menus. And while the installation of door guards may have made it impossible to slam doors, we see nothing in the record that would preclude a finding that Savage–Bey intentionally slammed doors before the guards were installed (or that would compel a contrary finding). Further, while we might agree with Savage–Bey that the employer's documents referring to complaints about Savage–Bey in 2006 (complaints about which Farmer had no personal knowledge) are entitled to little weight, we have no basis for concluding as a matter of law (as Savage–Bey suggests that we do) that the evidence shows that she was "terminated for pretextual reasons."

The ALJ recognized that she would "need to decide on credibility" to resolve the misconduct issue. Because she dismissed the case on timeliness grounds, she did not make a credibility determination with respect to the testimony on the misconduct issue and did not otherwise weigh the evidence. That being the case, we must remand. We trust that in light of the long passage of time since petitioner filed her claim and the fact that the evidentiary hearing has already been held, OAH will resolve this matter expeditiously.

Wherefore, we reverse the ALJ's decision dismissing petitioner Savage–Bey's appeal as untimely and remand for the ALJ to weigh the evidence, make the necessary credibility determinations, and determine whether petitioner is disqualified from receiving unemployment compensation benefits on the ground that she was terminated for misconduct.

*So ordered.*