*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-AA-1038

GIRMA W. ADMASU, PETITIONER,

V.

7-11 FOOD STORE #11731G/21926D, RESPONDENT.

Petition for Review of an Order of the
District of Columbia Office of Administrative Hearings
(DOES-1325-13)

(Submitted November 25, 2014                    Decided January 29, 2015)

*Christopher A. Bates*, *Drake Hagner*, *Jennifer Mezey*, and *John C. Keeney, Jr.*, were on the brief for petitioner.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*:  Petitioner, Girma Admasu, seeks review of a Final Order issued by the Office of Administrative Hearings ("OAH") on August 19, 2013, dismissing his appeal for lack of jurisdiction from a claim filed at the Department of Employment Services ("DOES") denying him unemployment benefits.  Admasu argues that his case meets the standard for excusable neglect and the Administrative Law Judge ("ALJ") abused her discretion in holding that there was no excusable neglect to warrant an extension of the fifteen-day deadline.  We

agree that the ALJ abused her discretion by not adequately considering all of the relevant factors for making a proper determination of excusable neglect. We remand the case for a determination consistent with this opinion.

## I.    FACTS

On March 15, 2013, Admasu applied for unemployment benefits after he was fired from his job at the 7-11 Food Store for refusing to return to work. After one week, Admasu followed up on his claim with DOES. On April 24, 2013 Admasu left the country on a sudden trip to Ethiopia to care for his sick parents, who eventually died. On May 10, 2013, while Admasu was still in Ethiopia, DOES mailed a "Determination to Claimant" letter and "D.C. Code and Notice of Appeal Right" form denying Admasu's claim for unemployment benefits and notifying him of the right to appeal within fifteen days under D.C. Code § 51-111 (b).

Admasu's wife, who was "newly in this country," remained at the couple's residence in the United States and monitored his mail. She received the letter and informed him via telephone that his claim had been denied; however, she did not communicate to him the information concerning the notice of appeal and the

fifteen-day deadline to appeal. *See* D.C. Code § 51-111 (b).[1] The determination letter and notice of appeal were both written in English. Admasu's native language is Amharic and at that time he and his wife had little understanding of the English language. Admasu returned from Ethiopia on July 21, 2013. Admasu went to the DOES office on July 23, 2013, where he was provided a copy of the May 10th letter and advised that he could appeal the determination to OAH. Admasu filed an appeal that same day.

On August 14, 2013, a hearing was held at OAH. There was no representation for the former employer, but Admasu was present and assisted by an Amharic interpreter. In order to establish jurisdiction to hear the case, the ALJ examined Admasu about his untimely filing of the appeal. Admasu informed the ALJ that his trip to Ethiopia was sudden due to the circumstances concerning his parents' health, thus he did not notify DOES of his departure. When asked if he had internet access to check the status of his claim online, Admasu stated that he

---

[1] "[A]fter an individual has filed a claim for benefits, an agent of the Director designated by it for such purpose shall make an initial determination with . . . respect to whether or not such benefit may be payable . . . the claimant and other parties to the proceedings shall be promptly notified . . . [and] such determination shall be final within 15 calendar days . . . the 15-day appeal period may be extended if the claimant or any party to the proceeding shows excusable neglect or good cause." D.C. Code § 51-111 (b) (2012 Repl.).

had checked the internet twice while he was in Ethiopia, but had also told "family" to check the status. He testified that three weeks into the trip, his wife notified him that DOES had denied his claim. Admasu claimed that he had no knowledge of the appeals process or fifteen-day deadline and that his wife was "new to the country" and didn't understand "enough English" to comprehend the notice of appeal. He stated that the first time he had learned of the appeals process was at the July 23rd visit to DOES. The ALJ told Admasu that he should have informed DOES that he was leaving the country or should have left someone in charge who could act on his behalf. The ALJ also stated that Admasu received the news of the denial while he was in Ethiopia and should've taken action at that time instead of waiting until he returned. In addition to his testimony, Admasu presented his passport bearing the travel stamps from Ethiopia and the United States, and an airline passenger receipt dated July 20, 2013.

On August 19, 2013, the ALJ issued a final order dismissing the appeal for lack of jurisdiction due to Admasu's untimely filing. The ALJ concluded that Admasu's appeal was filed 56 days after the deadline; there was no evidence presented which would have established that Admasu would not have met the fifteen-day deadline "with the exercise of ordinary care" nor did the record show that it would have been "unduly burdensome" for his wife to file the appeal. The

ALJ refuted Admasu's claim that his wife did not understand the entire content of the letter by stating that there was some evidence that she was capable of understanding the determination letter proven by the fact that she "accurately reported the decision concerning his claim." Applying the Supreme Court's four-part test[2] to determine whether excusable neglect existed to extend the fifteen-day appeal deadline, the ALJ found that Adamsu failed to act in good faith by not exercising his right to appeal within the deadline when "means were available" for him to do so; that the length of the delay was almost two months long; and there was "no material prejudice to the Employer." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

The ALJ held that there was no evidence of "excusable neglect" and to find otherwise in this case "would sanction one party's unexplained disregard of the

---

[2] *Pioneer* involved an issue concerning a late filing under Federal Rule of Bankruptcy Procedure 9006 (b) (1) where the court found that the rule authorized the bankruptcy court to "accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond party's control." *Pioneer*, 507 U.S. at 388. The test requires the court to determine: (1) the danger of prejudice to the other party; (2) the length of the delay and its impact on the judicial proceedings; (3) the reason for the delay and whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id*. at 395.

appeal rules and relieve it of even the modest duty to make a good faith effort to file its appeal on time. This petition followed.

## II. DISCUSSION

We "must affirm an agency's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *District of Columbia Dep't of Mental Health v. Hayes*, 6 A.3d 255, 257-58 (D.C. 2010) (quoting *Travelers Indemn. Co. of Ill. v. District of Columbia Dep't of Emp't Servs.*, 975 A.2d 823, 826 (D.C. 2009)). The court "must be satisfied that the ALJ '(1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings.'" *Savage-Bey v. La Petite Acad.*, 50 A.3d 1055, 1060 (D.C. 2012) (quoting *Walsh v. District of Columbia Bd. of Appeals & Review*, 826 A.2d 375, 379 (D.C. 2003)). We review an ALJ's determination of whether excusable neglect existed using the abuse of discretion standard of review. *See Snow v. Capitol Terrace, Inc.*, 602 A.2d 121, 123 (D.C. 1992) (no abuse of discretion where trial court found excusable neglect).

On appeal, Admasu claims that the ALJ abused her discretion by not finding excusable neglect for his late filing. He argues that this case satisfies the excusable neglect standard under D.C. Code § 51-111 (b) and the *Pioneer* four-part test, with the most important factor being the reason for his delay. *Pioneer*, 507 U.S. at 395. Admasu asserts that "[t]here is . . . no[t] substantial evidence to support the ALJ's finding that [he] failed to act in good faith." He relies on the fact that he filed an appeal two days after returning; his wife was incapable of acting on his behalf because of her limited English comprehension; and OAH policy requires the signature of the claimant on appeal forms, which prevented his wife from filing an appeal on his behalf. Admasu argues that the signature requirement meant that he would have had to fax or email the forms, but he did not have access to either when he was in Ethiopia. Admasu also argues that the ALJ did not apply all of the *Pioneer* factors, but only considered the element of good faith. In resolving this issue, we examine the relevant statutory provision and case precedent in which excusable neglect has been applied.

The controlling statutory provision in this case is D.C. Code § 51-111 (b) of the District of Columbia Unemployment Compensation Act. In 2010, the Act was amended to extend the deadline to appeal from ten days until fifteen days, and

extend beyond the fifteen days upon a showing of "excusable neglect or good cause." It now states, in relevant part:

> The Director shall promptly notify the claimant and any party to the proceeding of its determination, and such determination shall be final within 15 calendar days after the mailing of notice thereof to the party's last-known address or in the absence of such mailing, within 15 calendar days of actual delivery of such notice. The 15-day appeal period may be extended if the claimant or any party to the proceeding shows excusable neglect or good cause.

When resolving issues involving an extension of time for filing an appeal, we have stated that "[e]xcusable neglect has been held to include lack of knowledge of entry of a judgment, extraordinary cases such as physical disability and unusual delay in the transmission of mail, and so-called 'unique circumstances.'" *Pryor v. Pryor*, 343 A.2d 321, 322 (D.C. 1975) (citing *Files v. City of Rockford*, 440 F.2d 811, 814-15 (7th Cir. 1971)). However, excusable neglect does not apply to "run of the mill situations." *Snow*, 602 A.2d at 125. *See also Washington Metro. Area Transit Auth. v. Brown*, 619 A.2d 1188, 1192 (D.C. 1993) (trial court must determine whether failure to receive critical notices from the court constitutes "unique circumstances" sufficient to show excusable neglect within the meaning of D.C. App. R. 4 (a) (4)). "Excusable neglect seems to

require a demonstration of good faith on the part of the party . . . and some reasonable basis for non-compliance within the time specified in the rules." *Dada v. Children's Nat'l Med. Ctr.*, 715 A.2d 904, 908 (D.C. 1998) (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165 (2d ed. 1987)). We have held "that good cause is to be determined 'in the light of the circumstances of each case[,]'" *Leiken v. Wilson,* 445 A.2d 993, 1000 (D.C.1982), and "in making that determination, this court has always found the moving party's reasons . . . [are] key consideration[s]." *Rest. Equip. & Supply Depot, Inc. v. Gutierrez*, 852 A.2d 951, 956-57 (D.C. 2004).

In addition, this court has previously relied on the Supreme Court's four-factor test in *Pioneer* for determining whether excusable neglect existed under D.C. Code § 51-111 (b). *Savage-Bey*, 50 A.3d at 1061; *Pioneer*, 507 U.S. at 395. The test requires consideration of "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. at 395; *see also In re Estate of Yates*, 988 A.2d 466, 470 (D.C. 2010) (discussing the Pioneer factors and reversing the trial court's decision due to its failure to examine the appellant's length of delay and good-faith explanation in a case involving compensation for a court

appointed guardian). In *Savage-Bey*, three months after initially filing for unemployment benefits, the petitioner filed an appeal to OAH on the same day that she visited DOES and received notice regarding the denial of her unemployment benefits. *Savage-Bey*, 50 A.3d at 1059. The ALJ held that the appeal was untimely filed; petitioner did not meet the excusable neglect standard; therefore, there was no jurisdiction to hear the appeal. *Id*. at 1060-61. We held that the ALJ "should not have dismissed [the petitioner's] appeal as untimely" because the excusable neglect standard was satisfied by using the *Pioneer* factors and in light of "accomplish[ing] the legislative objective of minimizing the economic burden of unemployment" by liberally construing provisions of the Unemployment Compensation Act. *Id*. at 1063.

In this case, we conclude that the ALJ did not properly apply the entire *Pioneer* four-factor test in order to determine whether there was excusable neglect. The ALJ relied on this court's holding in *Rest. Equip. & Supply Depot, Inc.* concerning good cause, applied the Supreme Court's excusable neglect standard in *Pioneer*, and emphasized the Eighth Circuit's holding in *Lowry v. McDonnell Douglas Corp.*,[3] that the reason for the delay is the most important factor to

---

[3] In *Lowry,* the court recognized that "[t]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import"

(continued…)

consider when applying the *Pioneer* test. *Pioneer*, 507 U.S. at 395; *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000); *Rest. Equip. & Supply Depot, Inc.*, 852 A.2d at 956-57. However, the ALJ only discussed, in any detail, one prong of the *Pioneer* test, "whether [Admasu] acted in good faith." The ALJ did acknowledge the reason for the delay, but faulted Admasu's response to that delay and only briefly mentioned the two remaining factors: "length of the delay" and "danger of prejudice to the [other party]." The ALJ's holding rests on her conclusions that Admasu failed to have his wife file an appeal on his behalf; that he did not notify DOES of his departure; and that he failed to make an effort to meet the deadline himself. Our holding in *Savage-Bey* was based on each of the factors stated in *Pioneer*, not merely the good-faith factor. In making a determination of whether excusable neglect exists, it is not enough for the ALJ to only determine whether Admasu acted in good faith, but there must be a conclusion based on *all* of the *Pioneer* factors with emphasis on the reason for the delay.

---

(…continued)
and "the focus must be upon the nature of the neglect." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000).

Given the facts of this case and the factual findings of the ALJ, we are troubled by the ALJ's treatment of what has been determined to be the most important factor of the test, "reason for the delay, including whether it was within the reasonable control of the [petitioner]." *Lowry*, 211 F.3d at 462. Admasu testified that his reason for the late filing was due to his impromptu travel to Ethiopia and his wife's lack of understanding the determination letter. The ALJ concluded that there was an absence of evidence showing that Admasu was unable to meet the deadline with the use of ordinary care and there was some evidence that his wife understood the determination letter. This holding fails to take into account the factual finding that Admasu was in Ethiopia with his sick parents; that his wife had limited knowledge of the English language; and the fact that she could not file an appeal on his behalf because the appeal form required Admasu's signature. We think it essential for the fact-finder to give full consideration to all reasons for the delay in order to make a valid inquiry under the D.C. Code § 15-111 (b) "excusable neglect or good cause" exception.

In addition, the record does not support the ALJ's conclusion that Admasu failed to act in good faith. In *Starling v. Jephunneh Lawrence & Assocs.*, we suggested that excusable neglect existed where the appellant's attorney promptly and diligently acted by filing an opposition to a motion for summary judgment on

the same day he returned to the office, after missing the deadline due to his father's death. *Starling v. Jephunneh Lawrence & Assocs.*, 495 A.2d 1157, 1161- 62 (D.C. 1985). We remanded the case stating that the appellant may have been entitled to relief on the grounds of excusable neglect. *Id*. at 1162. *See also McMillan v. Choice Healthcare Plan, Inc.*, 618 A.2d 664, 667 (D.C. 1992) ("In determining whether the trial court abused its discretion, we evaluate each case in light of its peculiar facts . . . considering . . . whether the moving party (1) had actual notice of the proceedings; (2) acted in good faith; (3) took prompt action; and (4) presented an adequate defense.").

Moreover, in *Savage-Bey* we found that the petitioner acted without delay when she filed an appeal on the same day that she received a copy of her determination letter. *Savage-Bey*, 50 A.3d at 1059. Here, the ALJ found that Admasu filed the appeal once he received notice of the determination, two days after his return. Contrary to the ALJ's statement that Admasu could have made a good-faith effort to meet the fifteen-day deadline while he was out of the country, Admasu only had access to the internet on two occasions while he was in Ethiopia and there was no way he would have met the deadline. As with the appellants in *Savage-Bey* and *Starling*, Admasu promptly exercised his right to appeal, which is a demonstration of good faith.

Furthermore, we cannot agree with the ALJ's determination that finding excusable neglect in this case would stretch the statute to the "point . . . [of] no meaning of at all" and support a petitioner's disregard for the rule set by the statute. In drafting the Unemployment Compensation Reform Amendment Act of 2010, the D. C. Council's purpose was to "extend eligibility [and] improve the administration of the unemployment compensation program." D.C. Council Comm. on Hous. and Workforce Dev., Report on Bill 18-455 at 1 (2010). This case is an illustration of the legislators' intent to allow persons who fail to meet the deadline an opportunity to have their claims heard on appeal. In addition, the ALJ found that the delay in filing did not cause prejudice to 7-11 Food Store. We conclude that there must first be a determination, in which all reasons for the delay are considered, before speculation is raised that finding of excusable neglect would jeopardize the meaning of the words in the statute.

Accordingly, we remand this case to OAH to apply all of the *Pioneer* factors for excusable neglect, giving consideration to Admasu's reason for the delay.

*So ordered.*