*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-PR-1513

IN RE AYO GROOMS;
CHRISTINA C. FORBES, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(INT-308-01)

(Hon. Peter H. Wolf, Trial Judge)

(Submitted January 22, 2015                    Decided  September 3, 2015)

*Christina C. Forbes*, pro se.

*Louis L. Jenkins*, Auditor-Master, Superior Court of the District of *Columbia,* filed a memorandum *amicus curiae* on behalf of the Office of Auditor-Master.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Stacy L. Anderson*, Senior Assistant Attorney General, filed a memorandum *amicus curiae* on behalf of the District of Columbia.

Before GLICKMAN and FISHER, *Associate Judges*, and FARRELL, *Senior Judge*.

FARRELL, *Senior Judge*:  Christina C. Forbes, the permanent guardian for ward Ayo Grooms, appeals from the trial court's order granting in part her motion

for enlargement of time[1] to file an untimely petition for compensation under D.C. Code § 21-2060 (a) (2012 Repl.).  Appellant contends that the trial judge, in allowing only a portion of her compensation claims, abused his discretion by basing his conclusion largely, if not entirely, on appellant's delay in filing her compensation request, thereby minimizing (or ignoring) other factors relevant to whether her untimeliness stemmed from "excusable neglect."  We affirm.

## I.

Appellant became Ms. Grooms' general permanent guardian on August 4, 2005, replacing Ms. Grooms' mother.  As guardian, one of appellant's statutorily imposed duties was to file a semi-annual report on the "condition of the ward and the ward's estate."  D.C. Code § 21-2047 (a)(5).  After becoming guardian, appellant failed to file the report timely on twelve occasions.  Because Ms. Grooms has no assets or estate, appellant's compensation for services provided is drawn from the Guardianship Fund, a taxpayer-funded source established by D.C. Code § 21-2060 (a).  From 2005 to 2008, appellant filed three separate petitions for compensation; her third petition, filed in November 2008, covered a three-year

---

[1] *See* Super. Ct. Civ. R. 6 (b)(2).

period and was untimely,[2] but the trial court granted the motion to late-file and awarded 100% of the requested compensation.

On October 6, 2013, appellant again filed a motion for enlargement of time in which to petition for compensation. The accompanying petition sought $13,029 for services rendered and expenses incurred from August 20, 2008, to August 23, 2013. In support of her motion, appellant asserted "what she generally always says in defense of delays in filing compensation petitions," *i.e.*, that "the day to day work of serving the needs of her wards and clients takes priority over preparing and filing petitions for compensation." Appellant attested to having carried a "large caseload," but noted that she "was working mightily to reduce the delay in filing."

The trial court granted appellant's petition "only in part," ruling that it would "consider one year of counsel's petition for five years," but not more. The judge found that appellant's reasons for delay "[were] nothing more than her services to many clients, commendable though that may be"; they did not justify "a delay

---

[2] Pursuant to Super. Ct. Prob. R. 308 (c)(1), "A guardian's petition for compensation shall be filed no later than 30 days from the anniversary date of the guardian's appointment, except that a guardian's final petition for compensation shall be filed no later than 60 days after termination of the guardianship."

of . . . [five years]" in requesting compensation. Indeed, appellant had previously filed an untimely petition that "cited only the same reasons for delay as the current petition." Moreover, this was "not counsel's only rule violation: [h]er filing of guardianship reports ha[d] been the subject of delinquency notices TWELVE times in this case," as late as 2011.[3] Thus, in the trial court's view, appellant's cited "reasons [did] not constitute good cause or excusable neglect for the amount of time involved," and "[i]f counsel has too many cases to comply with the court's rules, she should start declining requested appointments."[4] Ultimately the court approved $2,603.00 in compensation, explaining that while "[t]he sanction here is stiff," it "appears necessary to get counsel's attention, preserve the court's integrity, and provide ongoing – and continuous – supervision of incapacitated persons."

## II.

This court has jurisdiction to review the compensation order. *See In re*

---

[3] In March 2009 the trial court had warned appellant that her failure to file timely reports could subject her to removal from the case.

[4] The court "invoke[d] its discretion to impose a sanction for repeated violation – indeed, ignoring – of court rules which become meaningless unless enforced."

*Orshansky*, 952 A.2d 199, 208 (D.C. 2008) (quoting Super. Ct. Prob. R. 8 (d)(4)) (holding that "[a]n 'order granting or denying [guardianship] compensation' is . . . a final order for purposes of appeal"). Our review of the order is for abuse of discretion. *In re Al-Baseer*, 19 A.3d 341, 345 (D.C. 2011); *see In re Estate of Yates*, 988 A.2d 466, 468 (D.C. 2010) (quoting Super. Ct. Civ. R. 6 (b)(2)). Appellant concedes that her petition in question was untimely, thus requiring her to demonstrate that "excusable neglect" caused her delay, *Al-Baseer*, 19 A.3d at 345, a standard that "permits a court, where appropriate, to accept late filings . . . ." *Yates*, 988 A.2d at 468 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)).

A "run of the mill situation[]" involving untimeliness, however, does not give rise to excusable neglect. *Admasu v. 7-11 Food Store # 11731G/21926D*, 108 A.3d 357, 361 (D.C. 2015) (citation omitted). Rather, appellant had to show "lack of knowledge of entry of a judgment, extraordinary circumstances such as physical disability or unusual delay in transmission of the mail, or unique [extenuating] circumstances." *In re AK. V.*, 747 A.2d 570, 574 (D.C. 2000) (internal quotation marks omitted). In turn, before deciding whether that standard was met, the trial court had to consider "the danger of prejudice to other parties, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including

whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Yates*, 988 A.2d at 468 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). Although the trial judge's order here did not expressly analyze each of the *Pioneer* factors, he nonetheless made "an informed choice in denying appellant's motion," and because that "determination was based upon and drawn from a firm factual foundation," *id.* (citation and internal quotation marks omitted), we find no abuse of discretion.

We consider first, as did Judge Wolf, the "danger of prejudice to other parties." *Yates*, 988 A.2d at 468 (citation omitted). Appellant argues that the harm resulting from her untimeliness fell "virtually entirely on [her]," since it was she who suffered the delay in receiving compensation. But the danger of prejudice went well beyond appellant's own circumstances and potential harm to herself. The public at large has an interest in the timely filing and resolution of petitions for compensation, since the compensation is drawn from a taxpayer-funded source when the ward's estate has been depleted. D.C. Code § 21-2060 (a). Thus, as the District of Columbia points out in its helpful submission as *amicus curiae*,[5] "a delayed petition for compensation may unjustifiably shift the obligation to pay

---

[5] Both the District and the Superior Court Auditor-Master have filed *amicus* memoranda at the court's request, and for which we are indebted to them.

guardian compensation from the ward to the Guardianship Fund, in contravention of the Guardianship Act" (Memorandum by the District of Columbia as *Amicus Curiae* Supporting Affirmance at 17).[6]

Moreover, as Judge Wolf had explained in *Waller*, *supra* note 6, Super. Ct. Prob. R. 308 (d) & (e) "afford[] ongoing supervision of fees and expenses rather than passing upon huge requests that may come years later"; the rule permits "the parties, and the court, [to] focus on [and question, if necessary,] fee requests that are more contemporaneous with the events giving rise to them, and the parties accordingly may be given guidance on future fees and expenditures." *See also District of Columbia v. Jackson*, 878 A.2d 489, 492 (D.C. 2005) (citation omitted) (the trial court itself has an interest in resolving petitions for compensation in a timely matter, as "prompt filing" permits resolution "while the services performed are freshly in mind"). Thus, while appellant may have been the party most directly affected by her untimeliness, she is not the only entity that suffered the "danger of prejudice" from her delays. *See Farmer v. Slotnick*, No. 96-15666, 1997

---

[6] Judge Wolf had pointed out the same danger in an earlier case, *In re Waller*, No. INT 221-02 (D.C. Super. Ct. Dec. 12, 2008), stating that "compensation one year may be payable from the subject's estate, and another year from the Fund . . . . But if at the end of four years, for example, there are no longer funds available from the subject's estate, the petition may be seeking payment from the Fund that could have been paid for earlier time periods from the . . . estate."

WL257471, at *1 (9th Cir. 1997) ("[A] showing of actual prejudice is [not] *required*. In reviewing for abuse of discretion, we need only consider whether there was a *danger* of prejudice to the party suffering the delay."); *Mesa v. Unocal Corp.*, No. 01-3438, 2003 WL943639, at *3 (E.D. La. Mar. 5, 2003) (same).

Second, the five-year delay prompting appellant's motion for enlargement of time was exceptional. When she filed the motion, the multiple requests for compensation subsumed within it were all untimely but for one, some by as much as several years. Appellant's response to this delay is to point to multiple probate "filings ruled on in 2013" in other cases, where compensation requests were approved in the face of delays as long as six years and ten months. But those instances elsewhere of the court tempering justice with mercy do not demonstrate an abuse of discretion by Judge Wolf. The earlier delays in this case, as appellant admitted, stemmed from her voluntary decision to carry a large number of cases, an issue plainly within her "reasonable control." *Yates*, 988 A.2d at 468 (citation omitted). The pattern of untimely compensation requests over the better part of a decade, resulting from appellant's own choice, was not the kind of "extraordinary circumstance" that compelled the trial judge to excuse her latest in the succession of delinquent filings.

Finally, appellant argues that the judge failed to make a finding of bad faith based on clear and convincing evidence, a finding she asserts is necessary under *Pioneer Inv. Servs. Co.* and related cases. The test under our decisions, however, is whether the party seeking to excuse a default "acted in good faith," *Admasu*, 108 A.3d at 362 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395), a determination to be made objectively in light of the circumstances, including the party's knowledge of the obligations neglected. *See*, *e.g.*, *1618 Twenty-First St. Tenants' Ass'n v. Phillips Collection*, 829 A.2d 201, 205 (D.C. 2003) (citation omitted) ("[g]ood faith . . . is not a purely subjective notion involving the proverbial actor with a pure heart and empty head" but includes some objective, "reasonable basis"); *Pierola v. Moschonas*, 687 A.2d 942, 949 (D.C. 1997) (when a debtor disputes a claim "in good faith," the "good faith requirement . . . is concerned not so much with the subjective moral character of the debtor but rather the requirement of consideration" and whether "there is an objective reasonable basis for the debtor's disputing his obligation to pay"); *Hemmati v. United States*, 564 A.2d 739, 745 (D.C. 1989) (a "bona fide belief" which is akin to a good faith belief must be founded in some "reasonable basis"). Thus, for example, whether appellant acted "wanton[ly]" or "deliberate[ly]," "for an improper motive," in delaying her compensation requests (Brief of Appellant at 9) are distinctly secondary inquiries, if relevant at all.

Besides appellant's repeated late-filing of compensation requests, she disregarded court deadlines even more important in nature. Judge Wolf found that her tardy filing of guardianship reports had resulted in delinquency notices twelve times in this case, despite a warning he had issued that she faced possible removal from the appointment as a result. Appellant's insistence that her conscientious service to her wards gave rise to these delays rings hollow in light of D.C. Code § 21-2043 (e)(2), which requires a guardian to "limit his or her caseload to a size that allows the guardian . . . [to] maintain regular and reasonable contact with each ward . . . ." It goes without saying that timely-filed guardianship reports are the means by which the court ensures such "regular and reasonable contact." Appellant's habitual delinquency in filing those reports thus went to the heart of her obligations as guardian, and, together with her indifference to the deadline for compensation claims, eroded any basis for a finding of good faith as the cases define it.

### III.

For these reasons, the trial judge did not abuse his discretion in granting appellant $2,603.00 in compensation, but in otherwise denying her fee request.

*Affirmed*.